UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HARLEYSVILLE WORCESTER INSURANCE
COMPANY,

                Plaintiff/Counter Defendant,

-vs-

MGB BUILDING, INC., MATTHEW G. BROOKS,
CHAD BROOKS, KATHLEEN M. HOLDING,
BRIAN HOLDING,

                Defendants/Counter-Claimants,

DECISION AND ORDER

16-CV-6135-CJS-JWF

**APPEARANCES**

For Plaintiff/Counter-Defendant
Harleysville Worcester Insurance Company:

    Dan D. Kohane, Esq.
    Jennifer Jeanne Phillips, Esq.
    Hurwitz & Fine, P.C.
    1300 Liberty Building
    Buffalo, NY 14202
    Tel: (716) 849-8900

    James J. Duggan, Esq.
    Jesse John Cooke, Esq.
    Duggan Pawlowski & Cooke LLP
    403 Main Street, Suite 700
    Buffalo, NY 14203
    Tel: (716) 575-5529

For Defendant/Counter-Claimant
MGB Building, Inc.:

    Sean Michael Spencer, Esq.
    Hagelin Spencer LLP
    135 Delaware Avenue, Suite 200
    Buffalo, NY 14202
    Tel: (716) 849-3500

| | |
|---|---|
| For Defendants/Counter-Claimants<br>Matthew G. Brooks and Chad Brooks: | Elsa Johanna Schmidt, Esq.<br>Jessica L. Foscolo, Esq.<br>Kenney, Shelton, Liptak & Nowak LLP<br>The Calumet Building<br>233 Franklin Street<br>Buffalo, NY 14202<br>Tel: (716) 853-3801 |
| For Defendants/Counter-Claimants<br>Kathleen M. Holding and Brian Holding: | Kevin A. Szanyi, Esq.<br>Webster Szanyi LLP<br>1400 Liberty Building<br>Buffalo, NY 14202<br>Tel: (716) 842-2800 |

**INTRODUCTION**

**Siragusa, J.** This insurance contract case, here on diversity jurisdiction, is now before the Court on the following applications all filed on May 30, 2017: (1) motion for summary judgment filed by Harleysville Worchester Insurance Company ("Harleysville"), ECF No. 69; (2) cross-motion for summary judgment filed by Brian Holding and Kathleen M. Holding ("Holdings"), ECF No. 70; and (3) cross-motion for summary judgment by Chad Brooks, Matthew G. Brooks, and MGB Building, Inc. ("MGB"), ECF No. 71. For the reasons stated below, the Court denies Harleysville's application, and grants the remaining applications.

**BACKGROUND**

Harleysville Worchester Insurance Company ("Harleysville") commenced this action seeking a declaratory judgment that it is not responsible for coverage on a 2012 Dodge Ram truck used by Chad Brooks which was involved in a personal injury accident. Harleysville issued a Commercial Lines insurance policy, number BA 00000014020J, effective on March 12, 2013, until March 12, 2014. That policy provided commercial auto

liability coverage to MGB. Matthew Brooks also has a personal auto policy, specifically covering the Dodge Ram truck, through State Farm Insurance Company.

The accident occurred on Christmas Eve in 2013 as Kathleen Holding was crossing a street in Spencerport, New York. Kathleen Holding's injuries included traumatic brain injury and fractures to her back and face. On August 27, 2014, she brought suit against MGB, Matthew Brooks, and Chad Brooks in New York State Supreme Court. Harleysville was not a party to the state court lawsuit.

As indicated above, the Dodge Ram truck that struck Ms. Holding was operated by Chad Brooks. The vehicle was titled to Chad Brooks' father, Matthew Brooks, and according to Defendants was on loan to Matthew Brooks' company, MGB.[1] In that regard, Matthew Brooks testified at his deposition in the state court action: that the truck had been on loan to MGB for approximately one year prior to the Christmas Eve accident; that it was used exclusively by MGB; that MGB paid all the expenses related to the truck including loan payments. Additionally, the Dodge Ram truck was marked with the MGB logo. Letter from Hon. J. Scott Odorisi to Kevin A. Szanyi, Joshua Henry and Brent Seymour (Jan. 4, 2016), ECF No. 25-4. Chad Brooks was employed by MGB and the truck had been assigned to him to use in his employment. MGB & Brooks Joint Statement of Facts ¶ 31, ECF No. 71-18. At the time of the incident, Chad Brooks had just left an MGB Christmas party luncheon.

---

[1] Harleysville disputes that the vehicle was loaned to MGB. Matthew Brooks testified that the vehicle was titled in his name only because MGB had insufficient assets to obtain a loan for its purchase. Matthew Brooks Dep. 29:4–11, ECF No. 69-5.

Harleysville disclaimed coverage for the Christmas Eve accident on the grounds that the truck was owned by Matthew Brooks, not MGB, and was being driven by Chad Brooks for personal use, not in furtherance of MGB business. Dan D. Kohane letter to Brooks and MGB (Sept. 12, 2014) *attached to* Bond Decl. *as* Ex. J, ECF No. 71-1.[2]

In the underlying state court action, the Honorable J. Scott Odorisi, New York State Supreme Court Justice, granted partial judgment on the issue of liability for the Holdings against Chad Brooks and further granted partial summary judgment against Matthew Brooks and MGB, finding both vicariously liable for the accident. Defendants appealed, but that appeal was subsequently dismissed upon the filing of a stipulation of discontinuance. *Holding v. Brooks*, 151 A.D.3d 1781 (N.Y. App. Div. 4th Dep't 2017).

## STANDARD OF LAW

### *Summary Judgment*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, … demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and "the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a) (2015). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir. 1996) (citation omitted).

The burden then shifts to the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[2] Brooks' motion includes what is titled as a memorandum of law, but it consists of only one page with the conclusion paragraph. ECF No. 71-19.

250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Id.* at 249. "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(c)(1). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

***Declaratory Judgment Action for Insurance Coverage***

A federal court may decline to exercise jurisdiction under the Declaratory Judgment Act as a result of the pendency of an earlier filed state court action that could resolve the issue pending in the federal court. *Brillhart v. Excess Ins. Co. of America*, 316, U.S. 491, 494 (1942). Here, however, Harleysville is not a party to the underlying state court action, and consequently the state court did not make a determination as to whether the insurance policy[3] at issue here offers coverage for the accident. As this is a diversity

---

[3] The complaint at ¶¶ 10–12 refers to one policy: "Commercial Lines insurance policy to MGB Building, policy number BA0000001420J, effective March 12, 2013 to March 12, 2014…." Compl. ¶ 10. The Court pointed out this fact at oral argument since, in their motion papers, the parties referred to a second policy, specifically a Commercial Liability Umbrella Policy to MGB Building, Inc., policy number CMB00000016967K, also effective from March 12, 2013 to March 12, 2014. In that regard, the parties agreed that the Umbrella Policy is only triggered if the underlying policy is in effect.

action, the Court will apply New York substantive law to resolve the pending motions. *See, Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941).

## ANALYSIS

At the outset, Defendants maintain that Harleysville is collaterally estopped from denying that MGB owned and borrowed the Dodge Ram truck. The Court disagrees. As Harleysville pointed out in its memorandum of law, "Collateral estoppel does not apply because, as the state court expressly recognized, the issue of whether MGB is a statutory owner under New York Vehicle and Traffic Law is a distinct issue from whether MGB owned or borrowed the subject vehicle within the meaning of the Harleysville Policy." Pl.'s Mem. of Law 9, May 30, 2017, ECF No. 69-12. *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449 (1985).

Turning to the policy at issue, Harleysville contends that since the Dodge Ram truck involved in the accident was not owned by, hired by, or borrowed by MGB, it is not covered. In response to an interrogatory, Harleysville's counsel stated the following:

> It is Harleysville's position that in order for a vehicle to be "borrowed" within the meaning of the Policy, it must be established that the vehicle was being used in furtherance of MGB business at the time of the accident. That is, it must be shown that MGB exercised control over the vehicle at the time of the accident. MGB employees engaging in personal travel are not acting within the scope of their employment or operating the vehicle within MGB's control.…
>
> It is also Harleysville's position that at the time of the accident the 2012 Dodge Ram was not borrowed by MGB because it was not being used in furtherance of MGB business or controlled by MGB at the time of the accident. Chad Brooks stated that at the time of the accident he was done with work for the day and he was going home to eat dinner with his family and go to church. He was completely done with work for the day.

Pl.'s Revised Responses to First Set of Interrogatories by Kathleen and Brian Holding ¶ 9, May 30, 2017, ECF No. 70-9.

Interpretation of an insurance policy is a question of law. *CGS Industries, Inc. v. Charter Oak Fire Ins. Co.*, 730 F.3d 71, 76 (2d Cir. 2013).

> "In interpreting the insurance policy, the ordinary rules of contractual interpretation apply." *Mass. Bay*, 1996 WL 389266, at *5.[4] "If the language of the policy is clear on its face, that language governs, but any terms that are ambiguous must be construed in favor of the insured." *Id.* (alteration and internal quotation marks omitted). "If a relevant term is not defined in the policy, it is to be afforded its ordinary meaning, which may include its usage in federal law; [and, again,] any ambiguity must be resolved in favor of the insured." *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 751 F. Supp. 2d 444, 450 (E.D.N.Y. 2010).

*Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.*, 812 F. Supp. 2d 527, 535 (S.D.N.Y. 2011), *aff'd sub nom. Bridge Metal Indus., LLC v. Travelers Indem. Co.*, 559 F. App'x 15 (2d Cir. 2014).

It appears that Harleysville is basing its argument for summary judgment on its contention, as detailed in its interrogatory response quoted above, that the Dodge Ram truck could be considered "borrowed" within the meaning of the policy, only if and only when it was being used within the course of MGB's business. More specifically, with respect to the accident at issue, Harleysville maintains that Chad Brooks, the driver, was not covered by the its policy because the truck "was not being used in the furtherance of [MGB's] business at the time of the accident," and Chad Brooks "was not using the subject vehicle in the course of his employment with MGB Building at the time of the accident." Pl.'s Mem. of Law 11; Harleysville Statement of Undisputed Facts ¶ 22, [ECF No. 69-1](#) (state court declined to reach the issue of whether the vehicle was used in the scope of employment at the time of the accident).

---

[4] *Mass. Bay Ins. V. Penny Preville, Inc.*, No. 95 Civ. 4845 (RPD), 1996 U.S. Dist. LEXIS 9671 (S.D.N.Y., Jul. 10, 1996).

Under the applicable provisions of the Harleysville policy, coverage for bodily injury pertains to "Covered Autos 01." As the policy clearly explains "Covered Autos 01" means "any 'auto'" which is defined in the policy as "[a] land motor vehicle…designed for travel on public roads." Harleysville Ins. Policy BA00000014020J at 9, *attached as* Ex. E to Foscolo Aff., Jul. 27, 2016, [ECF No. 33-5](); *see also* Compl. ¶ 11; Harleysville Mem. of Law at 1–2, [ECF No. 69-12](). The policy further defines "Insured" as "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage." Ex. E at 10. The Commercial Automobile Broad Form Endorsement—New York, Employees as Insureds states that for covered autos, "Who is An Insured" includes in pertinent part:

> a. [MGB] for any covered "auto."
>
> b. Anyone else while using with [MGB's] permission a covered "auto" [MGB] own[s], hire[s] or borrow[s]….

Compl. ¶ 12.

The policy makes clear that it covers any vehicle **borrowed** by MGB, and anyone driving a borrowed MGB vehicle with MGB's permission. Therefore, Harleysville's basis for disclaiming coverage, that is, the Dodge Ram truck was not being driven in the course of MGB's business, is *not* an element in the coverage equation. In reaching that conclusion, the Court finds support in section 1(B) of the "Commercial Automobile Broad Form Endorsement" which expands "an insured" in the section labeled "EMPLOYEES AS INSUREDS" to include: "Any 'employee' of yours while using a covered 'auto'[5] you don't

---

[5] Again, a "covered auto" is defined as *any* auto.

own, hire or borrow in your business or your personal affairs." Ex. E, [ECF No. 33-5 at 64](#).[6] In other words, for an employee using his or her own vehicle to be "an insured" under the policy, the use of such vehicle must in furtherance of MGB's business. As indicated above, there is no such qualification for covered vehicles which MGB borrows. The maxim "expression unis est exclusion alterius," applies here. The specification of items in a contract implies the exclusion of all not expressed. Had Harleysville wanted to include a limitation on "borrowed" vehicles to the effect that coverage pertained only when such vehicles were being used in the course of MGB's business, it could have done so.

Regarding its argument that the Dodge Ram truck was not borrowed, Harleysville cites the holding in *Carlson v. American Int'l Group, Inc.*, 130 A.D.3d 1479 (N.Y. App. Div. 4th Dep't 2015). Relying on that case, Harleysville maintains that in order for MGB to have borrowed the Dodge Ram truck, Defendants would have to show that MGB had "sufficient control over the…vehicle in order for it to be deemed a 'hired' automobile." *Id.* at 1481. That holding is distinguishable, however. In *Carlson*, the court dealt with a company, DHL, which hired an independent contractor. The Appellate Division held that the vehicle owned by the independent contractor did not thereby become hired by DHL. Here, by contrast, Chad Brooks was not an independent contractor with his own vehicle. The vehicle he drove was titled to his father, the principal of MGB, a closely held corporation, and, according to the father, the vehicle was on loan to MGB, and by MGB to Chad Brooks.

---

[6] Because the insurance policy consists of a number of documents, each with its own page numberings that begin with "1," the Court uses the ECF-assigned page number here to more precisely pinpoint the portion of the policy from which the quoted language is taken.

Harleysville also relies on *Dairylea Cooperative, Inc. v. Rossal*, 64 N.Y.2d 1 (1984). As was the case in *Carlson*, however, the truck at issue was a truck owned by R & H Hauling, an independent contractor. That truck was involved in an accident while it still carried license plates registered to Dairylea, which had not yet transferred title to R & H Hauling from Dairylea. Aetna insured R & H Hauling. Lumbermens insured Dairylea. The Court of Appeals stated:

> We conclude that the tanker was an owned vehicle under the Aetna policy, but a nonowned vehicle under the Lumbermens policy, notwithstanding the Vehicle and Traffic Law provisions which Aetna argues impose liability upon both Dairylea and Lumbermens as its insurer and the Uniform Commercial Code provision referred to by the courts below.

*Id.* at 8. The New York court relied on the fact that the Aetna policy listed the truck as an owned automobile. With regard to the Lumbermens policy, the Court of Appeals determined that the truck was not an owned automobile by Dairylea: "it cannot be said in any realistic sense that once the September 1, 1978 agreements and note were executed, Dairylea had any control over use of the tanker or could grant R & H permission to use it." *Id.* at 10. In contrast, the truck titled to Matthew Brooks, president of closely held MGB Building, Inc., was, according to him, on loan to MGB, which had loaned it to Chad Brooks. Chad Brooks was an employee of MGB, not an independent contractor. Harleysville's insurance policy did not require MGB to give notice of any borrowed vehicles, and Harleysville has not presented any evidentiary proof in admissible form showing that MGB did not borrow the truck from its president.

At oral argument, Harleysville's counsel, in response to a question from the Court as to whether the Dodge Ram truck was borrowed, responded, "I suppose one could, one could look at it that way. We don't look at it that way." Later during oral argument, the

Court put this question to Harleysville's counsel: "Is there any requirement that a borrowed vehicle has to be specified in the insurance policy? I mean, that you have to designate what the borrowed vehicle is?" He responded, "No, there is not." In response to the Court's question, "is there any requirement that MGB has to notify Harleysville of what the borrowed vehicles are?" counsel responded, "Absolutely not. There's no such requirement." Further at oral argument, Harleysville's counsel seemed to suggest that since Matthew Brooks owned the Dodge Ram truck, it was not loaned to MGB and thus was not borrowed ("This was always under the control of the individual who owned it. That's why we say it wasn't borrowed."). To the extent that this is Harleysville's position, the Court finds no support in the plain reading of the policy. However, even if there were some ambiguity, which the Court finds there was not, it is well settled that

> A reviewing court must decide whether, affording a fair meaning to all of the language employed by the parties in the contract and leaving no provision without force and effect, there is a reasonable basis for a difference of opinion as to the meaning of the policy. If this is the case, the language at issue would be deemed to be ambiguous and thus interpreted in favor of the insured.

*VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012) (quoting *Fed. Ins. Co. v. IBM,* 18 N.Y.3d 642, 942 N.Y.S.2d 432, 965 N.E.2d 934, 936 (2012) (internal citations, brackets, and quotation marks omitted))).

## CONCLUSION

For the reasons stated above, Harleysville's motion, [ECF No. 69](ECF No. 69), is denied; Holdings' motion, [ECF No. 70](ECF No. 70), is granted in part; and MBG's and Brooks' motion, [ECF No. 71](ECF No. 71), is granted in part. Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), the Court determines that pursuant to the Harleysville Commercial Lines insurance policy, number

BA 00000014020J, Harleysville is obligated to provide insurance coverage to MGB, Matthew Brooks and Chad Brooks, up to the limits of the policy.

The Clerk is directed to close the case.

DATED: November 16, 2017
Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge